GARNIER *vs.* POYDRAS.

ÉASTERN DIST.
*March,* 1839.

APPEAL FROM THE COURT OF THE FOURTH JUDICIAL DISTRICT, FOR THE PARISH OF POINTE COUPEE, THE JUDGE OF THE SECOND PRESIDING.

GARNIER
*vs.*
POYDRAS.

The power of the husband over the wife, and her capacity to sue, ratify, or make a contract, is fixed by the law of their domicil. So, where a married woman residing in France, and separated in bed and board from her husband, seeks to annul a transaction, made by her agent in Louisiana, on the ground that she was *unauthorized* to cause it to be made : *Held,* that the controversy must be determined by the laws of France, and not those of Louisiana, where her legal rights, involved in the controversy, exist, and are sought to be enforced.

A transaction entered into by a woman, separated in property from her husband, in order to be valid and binding on her, an *authorization* is necessary, under the laws of France.

In France the separation from bed and board, produces the same civil effects as to the wife, and places her in the same condition, as a separation in property ; and in both cases, her *incapacity* to contract, without the necessary authorization, or voluntarily to execute an unauthorized contract, continues until the dissolution of the marriage.

According to the laws of France, a separation from bed and board does not enable the wife to sue, ratify or make a contract, without the special authorization of her husband, or, in his absence, of the court ; and this may be given before or after the act, but the authorization or consent, must be special, or clearly result from some act in writing, for all acts already done or to be done.

It appearing that *proof* of the authorization, under which the plaintiff was proceeding in her suit, was insufficient, and that the defendant is entitled to have a final decision of the case on its merits, the court instead of non-suiting the plaintiff, remanded the cause for a new trial, and for both parties to make new proofs.

*Eustis, J.,* dissenting, was of opinion judgment of non-suit ought to be entered, as the plaintiff would not be bound by a judgment against her, and it was unjust to allow her to litigate her rights, without being bound by a decision which might be rendered adversely to them.

The plaintiff, Madame Michelle Garnier, residing in the kingdom of France, separated in property and bed and board

23          VOL. XIII.

from her husband, Alexander Bonneau, alleges that she is the niece and one of the heirs and residuary legatees of the late Julien Poydras. That Poydras died in 1824, and his executors, after proceeding to collect the debts of the succession, in 1827, rendered an account of their administration and showed that they had received to the credit of the estate one million two hundred and ninety-seven thousand and forty-five dollars, of which the sum of eight hundred and six thousand seven hundred and eighty dollars, have been received and divided in different and unequal portions among the heirs, and that considerable property yet remains unsold, consisting of houses and lots in New-Orleans and New-York, and a sugar plantation in Louisiana, &c. That the testamentary heirs are Benjamin Poydras de Lalande, residing in Pointe Coupeé, together with this petitioner, and several nephews and nieces living in France, but represented in this state by the said B. Poydras ; and that no partition or settlement of the succession has ever been made among the said heirs, or the portion of each ascertained, but that all the property remaining unsold by the executors, is still in a state of indivision ; and that B. Poydras took possession and has continued to enjoy the said property and the fruits and revenues, without ever rendering an account, together with money, notes and obligations, which he has collected, &c.

The plaintiff further alleges, that said B. Poydras de Lalande, claims to be the owner of the portion or share of said succession belonging to her, in virtue of a transaction or compromise made between him and Madame Mourain, her sister and agent, by notarial act, the 24th July, 1829, in which she undertook for herself, and as the agent of this petitioner, to transfer the portions of both of them, &c. That said B. Poydras relies on a ratification of this transfer or act of compromise, in sundry letters received from her since it was entered into as before stated ; but she expressly alleges that any letters written by her in relation to this transaction or the ratification, were written by her while she was a married woman, and not then separated from her husband in bed and board ; and that her sister, Madame Mourain, had no

authority to alienate or transfer her portion in the succession of her uncle ; and that she, herself, was never authorized, either by her husband or any court of justice, to make such alienation or any ratification of the same.

Wherefore, she prays that said act or transaction be re-scinded and cancelled, and that the title or claim of B. Poydras to her share in said succession, be declared null and void ; and that a partition thereof be made and decreed among all the heirs ; that B. Poydras be required to render an account of all the property, fruits, revenues and moneys by him received, and that a final partition be made thereof.

The defendant pleaded a general denial, and denied, specially, the authority and legal capacity of the plaintiff to institute this suit. He expressly avers that the plaintiff is precluded by said act of compromise, from setting up any claim to the succession of Julien Poydras, which was entered into for the purpose of settling various contestations, law suits, &c., and that she was fully apprised of its meaning and purport, and received, therefore, a full and more than ade-quate consideration ; and that she has ratified and confirmed this transaction since she possessed the legal capacity and authority to do so. He prays that the said act of com-promise or transaction, be confirmed and declared valid. But if it should be annulled, then he sets up a large claim in reconvention, to wit : the sum of sixty-four thousand dollars for advances, claims and moneys paid over and received by her, and for which he prays judgment and restitution, &c., together with interest, &c.

Upon these pleadings and issues, the cause was tried.

It appears the plaintiff and her sister, Madame Mourain, being both heirs and legatees of J. Poydras, in March, 1825, purchased one of the plantations and slaves, in the parish of Pointe Coupée, of their deceased uncle, through the agency of Madame Mourain, who was present, for one hundred and twenty-eight thousand dollars, and gave their notes with special mortgage on the property, to secure payment ; and also, affected their shares in the succession as additional security.

There was then various suits and contestations between the legatees and heirs, and the executors. The executors filed an account, and the defendant, B. Poydras, as heir and agent for the other heirs, took possession of the estate. It appeared that the share coming to each legatee amounted to about thirty-seven thousand eight hundred and eighty-four dollars. The price of the plantation and slaves purchased by the plaintiff and her sister, was due and unpaid ; suit was also instituted to enforce payment, and a balance, after allowing them credit for their share in the estate of Poydras, remained, for which they were bound, jointly and severally, of fifty-two thousand two hundred and thirty-two dollars. During the pendency of this suit, Madame Mourain, for herself and as the agent, acting under a power of attorney from her sister, &c., entered into an act of compromise with the present defendant, by notarial act, the 24th July, 1829. By this compromise these two legatees transferred to the defendant, *all* their rights in the estate of J. Poydras, who undertook to procure them a release from the payment of the price of said plantation and slaves.

The special object of the present suit is to set aside that act of compromise, so far as the plaintiff is concerned, on the ground that she was not duly authorized to make it, either by her husband or by a court of justice.

The authorization given to the plaintiff to enable her to make this transaction or compromise, is recited in the two powers of attorney executed by her to Madame Mourain, in 1824 and in 1827. The first authorizing her to settle her claim on Poydras's estate, under which the plantation and slaves were purchased ; and the second, approving the purchase, and authorizing her sister to sue in all cases, and to pay all accounts, &c.

The district judge presiding at the trial, after stating the pleadings, sums up the case, as follows :

" This statement of the pleading reduces the litigated points to a narrow compass ; and first, was the sale made by Madame Mourain, binding on the plaintiff? The authority of the agent is sought in a power of attorney, dated the 18th

September, 1824, executed in France, before Louis Dubois, notary public. This document conveys no such authority, and would not be binding on the plaintiff if it did, in her then situation of a married woman, not separated *de corps et de biens* from her husband. No act emanating from such a source could be legal, and, consequently, the sale or compromise possesses nothing upon which it can legally rest; neither does the court discover any subsequent ratification. The change in the condition of the property by the release of mortgage, was the act of *defendant*, in which plaintiff did not concur, and it was his own fault if he weakened his own security by trusting to the effect of an illegal act; neither does the sale of the property purchased by the plaintiff at the probate sale, give any additional weight to the pretensions of the defendant. She had an unquestionable right to dispose of this property, whether the mortgages were released or not. Defendant has insisted in the argument, that the sale or compromise, was not the sale of a real right; that at the time of its execution there existed no real property belonging to the succession of Poydras, upon which it could operate so as to constitute it a real right; that the whole property had been converted into money or credits, with the exception of a solitary house in the city of New-York, which house he has labored, and perhaps, successfully, to show plaintiff had a right to sell, without the consent or concurrence of her husband; this position conceded, it would not benefit defendant, by sustaining any part of his defence. It might change, it is true, the manner of the *transfer*, but would not change the nature of the *property*; it would still continue as before, *real property*, the disposition whereof would not be valid without the consent or concurrence of her husband, and this would be the only consequence flowing from such concession. The right to dispose of this description of property, (real property,) is taken from her by the positive enactments of our law. *Civil Code, article* 2410. The court, besides, is of opinion, that even in successions entirely composed of *personal* property, such a sale would be repudiated. *Civil Code, article* 463. Such rights as those attempted to be sold in the pre-

sent case, are *real* rights and subject to mortgage, as declared by the Supreme Court in the case of Robillard against the present plaintiff." 11 *Louisiana Reports, page* 279.

Judgment was rendered cancelling and annulling the act of compromise, and ordering a partition of the entire estate of J. Poydras, in the hands of the defendant, and that his demand in reconvention be dismissed.

From this judgment the defendant appealed.

*R. N.* and *A. N. Ogden,* for the plaintiff.

*L. Janin,* for the defendant and appellant.

*Rost, J.,* delivered the opinion of the court.

The plaintiff being one of the legatees of Julien Poydras, sues to annul a transaction entered into by her agent, in her behalf, with one of her co-legatees, in relation to her rights in the succession, on the ground that at the time it was made, she was a married woman, separated of property from her husband, and without authority, under the laws of France, where she has always resided, to compromise upon her real rights.

The defendant denies her legal capacity to institute and maintain the present action, and further alleges—

1st. That the transaction complained of embraced only moveables, which a woman separated of property has power to dispose of, without authorization.

2nd. That the plaintiff was fully authorized to make the said transaction, whether it embraced moveable or immoveable property.

3rd. That if she had not been, she voluntarily executed it, after her incapacity had ceased.

Judgment was given in favor of the plaintiff, in the court below, and the defendant appealed.

We take it for granted, that the power of the husband and the capacity of the wife are fixed by the law of their domicil, and that the present controversy is to be determined by the laws of France.

The defendant's counsel have not established the fact that the transaction embraced only moveable property. If it were admitted that the title to the house in New-York, which formed a part of the mass, never vested in the plaintiff, and that all the real property belonging to the succession of J. Poydras, situated in Louisiana, had been legally sold before its date, the *jus in re* which the executors retained, in the nature of mortgages, in conformity with the directions of the will, preserved to the proceeds of the sale the character of realty; the account of the executors, showing the mass upon which the transaction took place, contained mortgage claims to the amount of several hundred thousand dollars, and the very debt given up to the plaintiff in consideration of that contract, was a real, not a personal right. We are, therefore, of opinion, that an authorization was necessary, and that without it, a voluntary execution on the part of the plaintiff, after she was separated from bed and board, but before the dissolution of the marriage, could not be opposed to her. "In France," says *Merlin, Repertoire Jurisprudence, verbis Autorisation, maritale et separation de corps,* (separation from bed and board,) considered with respect to its civil effects, procures to the wife the same advantages and places her in the same condition (*dans le même état,*) as the separation of property." Her incapacity continues until the dissolution of the marriage, and while it lasts, the voluntary execution of a contract made without authority, cannot be opposed to her. *Code Napoleon, articles* 217, 219, 1338.

The only question in this case is, whether the plaintiff was at any time authorized to make the transaction, or to execute it after it was made ; and if not expressly authorized, whether that authorization necessarily results from other powers given to her by her husband or by the court. We understand the law of France to be, that the consent of the husband, or in his absence, of the court, may be given before or after the execution of the unauthorized contract, and that any act in writing from which that consent to acts done clearly results, satisfies the requisition of the statute. The authorization must be special for all acts to be done ; but it

EASTERN DIST.
*March,* 1839.

GARNIER
*vs.*
POYDRAS.

A transaction entered into by a woman, separated in property from her husband, in order to be valid and binding on her, an *authorization* is necessary, under the laws of France.

In France, the separation from bed and board produces the same civil effects as to the wife, and places her in the same condition as a separation in property; and in both cases, her *incapacity* to contract, without the necessary authorization, or voluntarily to execute an unauthorized contract, continues until the dissolution of the marriage.

According to the laws of France, a separation from bed and board does not enable the wife to sue, ratify, or make a contract, without the special authorization of her husband, or in his absence of the court ; and this may be given before or after the acts, but the authorization or consent must be special, or clearly result from some act in writing, &c.

GARNIER
*vs.*
POYDRAS.

may embrace all acts already done, because these are always certain and specific.

The record contains a judicial authorization given to the plaintiff, in 1831, on her application to sell the undivided half of a plantation which she had acquired in Louisiana, being thereunto, as she alleges, duly authorized, with funds arising to her profit out of the succession of J. Poydras. She is further authorized to do, and undertake all necessary proceedings as plaintiff or defendant amicably or judicially, to arrive at the final partition of her rights in the succession of J. Poydras. The proceedings had upon this application are annexed to the decree, with the exception of the report of the *juge commis*, which we presume, contained the facts made known to the court, and show the actual situation of the plaintiff at the time. The plaintiff, in her petition to the French tribunal, and her counsel in the brief submitted to us, admit, that another judicial authorization was given to her in 1825, to sanction the purchase made of the plantation by her sister. The plaintiff was separated of property in 1821, and her husband had then been absent for many years, and has never returned. Julien Poydras died in 1824. Under these circumstances, we are inclined to believe that another judicial authorization to accept the succession must have existed, as is stated in the power of attorney of the plaintiff to Madame Mourain, in 1824. Under the law of France, the court could not, and dare not have authorized her to sue for a partition, as legatee pure and simple, without first having ascertained the value and charges of the succession. The powers given, as far as they are known to us, are special in nothing, except in the purchase and sale of the plantation. The knowledge of the facts which were made known to the French court by the plaintiff, when they were obtained, can alone enable us to ascertain their extent. Without it we are unable to do justice between the parties. It may be true, that the *onus pro bandi* lay on the defendant, and that what he has failed to prove, is, as if it did not exist; but if we held him bound by the strict rules of the law of evidence, those rules would compel us on the other hand, to dismiss

the plaintiff's action, on account of her want of authoriza-
tion.   Under the laws of France, as we have already stated,
separation from bed and board does not enable the wife to sue
without a special authorization ; and the plaintiff does not
allege that she sues under any ; it is true, however, that the
general authorization given to her in 1831, was introduced
in evidence for some other object, and is found in the record.
It is unnecessary to determine whether this would be suffi-
cient in any case, unless she had alleged that she was pro-
ceeding under it, for we are of opinion that the authorization
itself, did not contemplate the present suit, and is insufficient
to maintain it.

   Under the transaction which the plaintiff seeks to avoid,
she took her share of the risk of two suits then pending
against the succession, to wit., that of the *Heirs of Bird* and
that of *Leocadie Poydras*, and these had to be terminated
before she could ascertain her rights in the succession.   If
the authorization was given in reference to those suits, and
the stipulations of the compromise, it was sufficient ; but if
it referred to all the affairs of the succession, and the court
went upon the supposition that no act had yet been done
therein by the plaintiff, the general authorization to proceed
at law as plaintiff or defendant, in order to arrive at a final
partition of her rights, does not empower the plaintiff to sue
one of her co-legatees, to avoid a private contract made with
him.   If the law requires a special authorization to enable
the wife to make a contract, it also requires a special autho-
rization to attack it after it is made ; and in both cases alike,
the court will only grant it *en connaissance de cause.*   In a
case cited by the plaintiff's counsel, as having occurred to
the plaintiff herself, after she had been authorized to accept
purely and simply the succession of one of her sisters,
although the solvency of the succession was notorious, and
she could run no risk, the court refused to authorize her to
sue and be sued on all principal or incidental demands, and
to make all sales and settlements, on the ground that the
right of authorization can only apply to facts known and
specified, to demands actual and certain, and not to eventu-

EASTERN DIST.
*March*, 1839.

GARNIER
*vs.*
POYDRAS.

alities more or less probable; we concur in that interpretation of the law, and we are satisfied that the authorization of 1831 is insufficient. It is the allegation of similar defects which has given rise to this controversy, and the defendant is entitled to have it conducted in such a manner as will insure a final decision.

Upon the whole, we are of opinion, that this case ought to be remanded to the District Court, in order to enable both parties to make proof of the various authorizations under which they claim.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be avoided and reversed, and that this cause be remanded for a *new trial ; and that* the plaintiff and appellee pay the costs of this appeal.

*Eustis, J., dissenting*; was of opinion, judgment of non-suit ought to be entered, as the plaintiff would not be bound by a judgment against her, and it was unjust to allow her to litigate her rights without being bound by a decision which might be rendered adversely to them.

**Eustis, J.** I dissent from the opinion of the majority of the court.

The disability of the plaintiff, a married woman, separated from bed and board from her husband, to institute this suit without the authority of her husband or a court of justice, was pleaded specially by the defendant ; and this court has come to the conclusion, that under the laws of France, the place of domicil of the plaintiff, such an authority was requisite to enable her to bring that action, but that no such authority had been proved. In my opinion, the suit ought to have been dismissed, and judgment entered as in case of non-suit. Had a judgment been rendered against her, she would not have been bound by it; and I consider it unjust to permit her to litigate her rights, without being bound by a decision which should be rendered adversely to them.